UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| FELIPE MULERO, | : | |
|---|---|---|
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:07-cv-1139 (JCH) |
| | : | |
| STATE OF CONNECTICUT, | : | |
| DEPARTMENT OF EDUCATION, | : | |
| Defendant. | : | AUGUST 18, 2008 |

**RULING RE: DEFENDANT'S MOTION TO DISMISS [Doc. No. 37]**

**I.   INTRODUCTION**

Defendant, State of Connecticut Department of Education ("Department"), brings this Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Specifically, the Department alleges that Count One of Mulero's Third Amended Complaint fails to state a claim upon which relief can be granted with respect to his Title VII claim. With regard to Mulero's claim, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq, alleged in Count One, the Department argues that it is barred by the Eleventh Amendment. Similarly, the Department alleges that Mulero's claim pursuant to the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-58 and 46a-60, in Count Two is also barred by the Eleventh Amendment. For the following reasons, the court GRANTS the Motion to Dismiss.

**II.   FACTS**[1]

Mulero is a former employee of the Department at the A.I. Prince Technical

---

[1] The court takes the facts alleged in the Third Amended Complaint (Doc. No. 34) as true for purposes of this Motion and draws all reasonable inferences in the plaintiff's favor.

School as a Vocational Instructor. He was first employed with the Department on May 29, 1992. He was dismissed from his employment on June 4, 2001. The reasons stated for his dismissal include employment related misconduct and violation of a state regulation. Specifically, Mulero's dismissal letter alleges that Mulero submitted misleading applications for promotion in that he forged signatures and incorrectly answered questions about his criminal history. The dismissal letter, written by Dominic Spera, the Superintendent of the Vocational-Technical School System, stated that Spera intended to request revocation of Mulero's teaching certificate.

The events leading to Mulero's termination, and ultimately this case, are lengthy. In February 1997, Mulero had a Neurology Consultation which indicated he had an injury to the head and suffered from chronic headaches, decreased memory, and trouble sleeping. Third Amended Complaint, Att. A at 18. In May 1997, Dr. Marvin Zelman wrote to Mulero's attorney stating that Mulero has a "psychotic condition" and "a limited ability to deal with reality." Dr. Zelman further stated that he was "extremely defensive and disorganized . . . suspicious and mistrustful." Id. at 19 This condition, in Dr. Zelman's opinion, meant that Mulero could not work or participate in any discussions about his employment. Id.

On April 21, 1997, Mulero received a letter from Edward Pierce, Education Labor Relations Specialist at the Department. The letter indicated that Mulero had failed to attend a scheduled meeting. The meeting was to allow Mulero an opportunity to respond to an incident that occurred at Vinal Technical School, and a sexual harassment charge. Id. at B-1. Mulero's attorney, Robert Muchinsky, had sent Pierce a letter from his doctor indicating that Mulero was unable to attend work. Id. Pierce

requested the Mulero contact him immediately to set up another meeting time and to complete a medical certificate with an explanation as to the medical reasons for his absence. Id. On May 2, 1997, Pierce wrote Mulero another letter stating that he received the medical information, but noted that Mulero failed to contact him as directed. Id. at B-2. In the letter, Pierce directed Mulero to contact him again and warned him that, if he failed to comply, the letter would be treated as a dismissal. Id. On May 30, 1997, the record indicates that Mulero was incarcerated. Pierce made a "professional visit" to Mulero during this time. Id.

On March 5, 1999, Mulero voluntarily settled a complaint he had filed with the Commission on Human Rights and Opportunities ("CHRO") under Conn. Gen. Stat. § 46a-60(a)(1). Id. at B-4. In this settlement, Mulero agreed to withdraw two of his complaints with CHRO and various grievances with his union. Id. The settlement further stated that there would be no discrimination or retaliation against Mulero for having filed the complaints. Id. The agreement provides that Mulero waived his right to pursue any further legal proceeding against the Department with respect to the charges. Id. On March 29, 1999, Mulero received another letter from Pierce regarding an outstanding allegation, that had not been part of the settlement, of sexual harassment of female students at Vinal Regional Vocational School. Id. at B-4. The letter informed Mulero of the sexual harassment policy and indicated that he must attend sexual harassment training.

On March 15, 2000, Mulero was reprimanded again by the Department for "inappropriate conduct toward students" including the use of profanity and excessive use of the telephone during school hours. Id. at B-5. On March 21, 2000, Dr. Dale

Wallington sent a letter to Mulero stating his opinion that Mulero was unable to work until May 5, 2000, due to an Adjustment Disorder with Anxious Mood. Id. While Mulero was under the care of Wallington, Peirce sent a letter to the doctor asking for medical information related to Mulero's return to work. Id. Wallington advised Mulero to return to work on May 8 and suggested to Pierce that Mulero start a job at a new school near his home and on the bus line "where he has no past employment history." Id.

In October 2000, Mulero was placed on administrative leave with pay pending an investigation of alleged misconduct. Id. at B-6. During this time, he was instructed not to return to work at A.I. Prince. Id. at B-7. On March 9, 2001, Mulero received a letter from an Educational Consultant at the Department in response to an application for a professional educator certificate from Mulero. In the letter, Kathleen DeFelice, the Education Consultant, noted that Mulero had been convicted of motor vehicle violations and served time in prison. She indicated that, while the Bureau of Certification can deny an application for certification because of a previous conviction, she gave Mulero the opportunity to send a letter of explanation and information regarding the disposition of his cases. Id. at B-8. DeFelice wrote to Mulero again on April 30, 2001, stating that the Chief of the Bureau approved the continuation of his certificate despite the fact that Mulero had not provided accurate responses on his application with regard to his previous convictions. Id.

On May 3, 2001, Mulero received a letter from Pierce regarding the pending investigation into his misconduct. Id. at B-9. Pierce indicated that the investigation brought to light more issues and requested that Mulero attend a meeting with representatives of the Department to discuss these issues. Id. at B-9. He also warned

that the meeting could result in discipline. Mulero missed the meeting because his new attorney was unable to attend. Id. A new meeting was scheduled for May 23, 2001. Id. At the meeting Mulero was given a Loudermill[2] hearing.[3] Id. at B-12. His attorney, Katrena Engstrom, was present. Id. Pierce and Richard Wilber, another representative of the Department, reviewed Mulero's responses to the Loudermill hearing and ultimately determined to discharge Mulero. Id. In a letter dated June 4, 2001, Spera, the Superintendent, indicated the reason for discharge was false information provided by Mulero in his employment applications.[4] Id. Piece further stated that Mulero was terminated for violating state regulations in that he forged signatures on an application to the Department of Motor Vehicles in order to gain permission to drive to work even though his license was suspended. Id.

Not only was Mulero terminated from the Department as a result of this investigation, but he was also investigated by the Connecticut State Police. Ultimately, he was charged with forgery under Conn. Gen. Stat. § 53a-138. Mulero was found guilty by a jury on September 19, 2003, of forgery in the second degree. Mot. To

---

[2] The Supreme Court in Cleveland Bd. of Educ. v. Loudermill interpreted the Due Process Clause as having a procedural component that prevents states from depriving individuals of property interests without adequate procedural protection. 470 U.S. 532 (1985). One such protection is that an individual be given the opportunity for a hearing before being deprived of a significant property interest, such as his employment. Id. at 542.

[3] In his reply brief, Mulero alleges that he did not receive a "louderdale mill" hearing. Res. to Mot. to Dismiss ¶ A. He did not elaborate on this in his reply. However, he attached a letter to his Amended Complaint that stated he did receive such a hearing. Id. Because there is a letter stating such a hearing took place and that letter was filed by Mulero, the court assumes that Mulero did receive a Loudermill hearing, at least with respect to his dismissal from the Vocational-Technical School System.

[4] Mulero sent a letter of resignation, dated June 1, 2001, to the Executive Union Representative. In this letter, he requested that a "form statement of successful professional experience" be processed by the Union. Id. at B-15. Spera responded to this letter on June 6, 2001, stating he would not accept the resignation pursuant to his dismissal effective June 4, 2001. Id. at B

Dismiss at 2. On November 17, 2003, he was sentenced to a prison term of five years that was suspended after twenty five months followed by five years of probation. Id. The conviction was upheld on appeal in September of 2005. Id. The record indicates that Mulero was still incarcerated on February 5, 2007.[5] Am. Compl. at B-3.

Mulero began submitting applications for teacher certification in late June 2001. Id. at B-18.[6] He was not provided the certification because of Spera's request that his certification be revoked subsequent to his termination in June. Id. Nevertheless, Mulero continued to pursue certification.[7] In January 2003, Mulero applied for a temporary 90 day certificate. Id. at. B-21. In a letter from DeFelice, Mulero was granted the temporary certification before the Department received information related to his dismissal from the Regional Vocational Technical School System. Id. The letter granting him certification states, "if at any time additional information becomes available that would impact our decision to authorize certification, we will consider it and all information in your file, and take action as appropriate." Id. Subsequently, on December 14, 2005, Mulero received another letter indicating that his request for

---

[5] Mulero attached many exhibits to his Amended Complaint. There seems to be no rhyme or reason to the order that he put them in, making it difficult to piece together their significance. Moreover, some of the documents are incomplete. There are many documents from the Connecticut Correctional Institution ranging in date from September 2006 through February 2007. Many of these documents chronicle Mulero's mental health and include mentions of back pain, paranoia, headaches, anxiety, and narcissism. It is not clear from the record why he was incarcerated during this time (i.e., whether it was related to the forgery conviction or something else).

[6] Mulero attached documents indicating that he got satisfactory ratings as a teacher from the years 1992 through 1997. Id. at B

[7] It bears noting that Mulero attached an unsigned consent agreement, dated April 2004, that acknowledges that Mulero voluntarily surrendered his professional educator certificate effective March 1, 2001 and expiring on February 28, 2006. See Id. at B-23. Additionally, there is a formal letter from the Department, dated April 2, 2004, indicating the same. However, in the same attachment there is a handwritten letter from Mulero dated April 7, 2004, that states he did not surrender his certificate. Id.

-6-

Connecticut certification was denied. Id. at B-24. In this letter, the Department indicates that further information was received since the granting of the 90 day certificate. Specifically, the Department received additional documentation from Connecticut Technical High School System, Central Connecticut State University, and the Bridgeport Public Schools regarding Mulero's misrepresentation of information on documents and inappropriate behavior towards students and staff. This pattern of conduct, according to the Department, warranted the denial of the certification. Id.

The December 14, 2005 letter stated that Mulero had a right to an appeal if he requested one. Id. It is not clear from Mulero's Third Amended Complaint, including attachments, whether Mulero requested such a review and if so, what the outcome of that review was.[8] However, Mulero did file a document dated, February 15, 2006, that lists all of the complaints he filed with CHRO. Id. at B-28. There are twenty-one complaints listed, although they are not dated. Id. Finally, Mulero submitted a Dismissal and Notice of Rights form from the Equal Employment Opportunity Commission ("EEOC") that is dated April 23, 2007. However, it is not clear to which of his claims this relates.

As a result of the above, Mulero now claims that the Department is retaliating against him because they have not provided him with his certification. Specifically, Mulero often mentions Pierce as the principal person retaliating against him. For example, he claims that Pierce fabricated his convictions. Am. Compl. ¶ 31. He also

---

[8] In his attachments to his Third Amended Complaint, Mulero inserted a letter following the December 14, 2005 letter, indicating that he requested a review of a denial of certification. This request was received by the Department on January 20, 2005. Id. at B-25. Thus, this January 2005 review could not possibly relate to the December 14, 2005 decision to deny certification.

-7-

claims that he was illegally terminated from his position with the Department and did not receive the appropriate due process. He further alleges that the Department engaged in unfair labor practices and discriminated against him because of his mental illness.

Mulero's claims are difficult to decipher. The court has done its best to read them in the manner most favorable to the nonmoving party. Mulero seeks monetary damages for wages lost since 2001, pain and suffering and interest, totaling $20,995,500. He also requests that the court see to it that the harassment and retaliation stop.[9]

In all, Mulero's Third Amended Complaint includes two counts incorporating causes of action related to Title VII of the Civil Rights Act, the Americans with Disabilities Act, and Connecticut Fair Employment Practices Act, §§ 46a-58 and 46a-60a. He also claims that as a result of the retaliation the Department violated his Thirteenth Amendment Rights.

### III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests only the adequacy of the complaint. United States v. City of New York, 359 F.3d 83, 87 (2d Cir. 2004). A Rule 12(b)(6) motion can be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Such a motion cannot be granted simply because recovery appears remote or unlikely on the face of the

---

[9] Additionally, on July 1, 2008, Mulero filed a Motion for Miscellaneous Relief (Doc. No. 49). The court does not understand what relief Mulero seeks from the court. If Mulero's deposition is being videotaped, and he is seeking the Department to provide it to him (and the court), the request is denied.

complaint.  Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Id. (quotation omitted).

Mulero has filed his appearance, *pro se*; thus, the court further notes:

> Since most *pro se* plaintiffs lack familiarity with the formalities of pleading requirements, we must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel . . . .  In order to justify dismissal of the plaintiff['s] *pro se* complaint, it must be beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Lerman v. Bd. of Elections, 232 F.3d 135, 139-140 (2d Cir. 2000) (citations, footnote, and internal quotation marks omitted); see also Diaz v. United States, 517 F.3d 608, 613 (2d Cir. 2008)( recognizing that courts should liberally construe *pro se* submissions).  In evaluating the plaintiff's complaint, the court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in [the plaintiff's] favor."  Cruz v. Gomez, 202 F.3d 593, 596 (2d Cir. 2000) (citations omitted).  The court must construe "*pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest."  Id. at 597.  However, "bald assertions and conclusions of law will not suffice to state a claim . . . ."  Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir. 2000), abrogated on other grounds, Swierkiewicz v. Solema N.A., 534 U.S. 506 (2002) (internal citations omitted).

**IV . DISCUSSION**

In its Motion to Dismiss, the Department attacks the Amended Complaint on the following grounds: 1) Mulero's constitutional claims under the ADA and CFEPA are

barred by sovereign immunity, and 2) it lacks of subject matter jurisdiction for failure to exhaust administrative remedies as to Mulero's Title VII claims in Count One.

A.  Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that states are subject to immunity against suits in federal court. Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 106 (1984). A claim against a state agency is considered a claim against the state and implicates the Eleventh Amendment because the state is a "real, substantial party in interest." Id. At 101. See also Huang v. Johnson, 251 F.3d 65, 70 (2d Cir. 2001). Accordingly, the Eleventh Amendment bars suits against the state, state agencies, and state officers in their official capacity unless one of two exceptions is met. First, a state may waive immunity and consent to suit in federal court. Second, Congress may abrogate a state's immunity to suit.

The Department urges that the Eleventh Amendment bars Mulero's claims under the ADA and CFEPA. The Supreme Court has held that suits against states under the ADA are barred by the Eleventh Amendment. Bd. of Tr. of the Univ. of Ala.v. Garrett, 531 U.S. 356 (2001)(holding that Congress overstepped its constitutional authority when abrogating states' immunity for claims brought under the ADA). Mulero has brought his claims against the Department of Education which is a state agency.[10] He seeks money damages as well as prospective injunctive relief.[11] However, because the

---

[10]At various times in his Amended Complaint, Mulero mentions Edward Pierce as one of the people who is retaliating against him. See, e.g., Am. Compl. ¶ 31. However, Pierce is not a named defendant in this case so the court will not address any purported claims against him.

[11]The court construes the language "cease and assist (sic) of all harassment and retaliation" as a request for prospective injunctive relief. See Am. Compl. at 7. However, claims for prospective relief are only viable if they are against state officers, rather than the state itself. Mulero has not named individual

-10-

Department of Education is an arm of the state of Connecticut, his claims under the ADA are barred by the Eleventh Amendment.

The Department also seeks dismissal of Count Two of the Amended Complaint which raises claims brought against it under CFEPA on the grounds that these claims are also barred by immunity because the state has not consented to suit in federal court. Specifically, the Department argues that §§ 46a-99 and 46a-100 of CFEPA limit suits against state agencies to actions brought in the state court, not federal court. Thus, the department argues that, while the state has waived its immunity in its own courts, has not done so with respect to actions brought in federal court.

The Eleventh Amendment bars suit against a state or its agency in federal court unless "the State's consent [to suit is] unequivocally expressed." Pennhurst, 465 U.S. at 99; see also, Northern Life Ins. Co. v. Read, 322 U.S. 47, 54 (1944)("A clear declaration of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found"). It has been found by this court that the language in the Connecticut statute does not rise to the level of the clear declaration required in Northern. Walker v. Connecticut, 106 F. Supp. 2d 364, 370 (D. Conn. 2000) (Burns, J.); Barclay v. Michalsy, 451 F. Supp. 2d 386, 389 n. 1 (D. Conn. 2006) (Arterton, J.). Thus, while the state has clearly waived immunity to claims brought under CFEPA as to cases brought in the Connecticut state courts, it has not waived its immunity in federal courts. Conn. Gen. Stat. § 46a-99. Therefore, the court grants the

---

state officers in this suit; thus, his claims for prospective relief as they relate to the ADA and CFEPA are also barred. See Huang, 251 F.3d at 70 (stating "suits for injunctive relief against state officers, rather than against the state itself, are permitted, provided the relief sought is prospective."); Edelman v. Jordan, 415 U.S. 651, 677 (1971)

Department's Motion to Dismiss as to the ADA and CFEPA claims brought against it on the grounds that they are barred by Eleventh Amendment Immunity.

B.      Title VII Claim

Count One of Mulero's Amended Complaint addresses claims under Title VII of the Civil Rights Act of 1964 for gender based discrimination and discriminatory retaliation. In its Memorandum in Support, the Department asserts that Mulero fails to state a claim upon which relief can be granted because his claim is time barred. The claim is barred, according to the Department, because Mulero did "not allege that he exhausted his administrative remedies and obtained a right to sue letter within 90 days of filing this lawsuit."

Unlike Mulero's other claims, the state may be sued for violations of Title VII. Fitzpatrick v. Bitzer, 427 U.S. 445 (1976). "[A]s a general matter, the failure to exhaust administrative remedies and receipt of a right to sue letter is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement" Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)(internal citations omitted); see Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Thus, the exhaustion requirement "is subject to waiver, estoppel, and equitable tolling." Id. at 767. However, exhaustion remains an essential element of a Title VII and defendants are entitled to insist that plaintiffs comply with it. Id. The exhaustion requirement exists to afford the administrative agency the opportunity to investigate, mediate, and take remedial action. Butts v. City of N.Y. Dep't of Hous. Preservation and Dev., 990 F.2d 1397, 1401-1402 (2d Cir. 1993)(citing Stewart v. U.S. Immigration and Naturalization Serv., 762 F.2d 193, 198 (2d Cir. 1985)). A district court may only hear Title VII claims that are either

included in an administrative charge or that are based on conduct which is "reasonably related" to the conduct alleged in the administrative charge. Id. at 1401.

Mulero attached a right to sue letter from the EEOC to his Amended Complaint that is dated April 24, 2007. It is not clear which of his EEOC complaints is related to this letter.[12] Further the right to sue letter is one page and does not indicate what Mulero complained of or who his complaint was against.[13] The fact that Mulero fails to address his exhaustion in his Amended Complaint further complicates matters as it makes it impossible for the court to decipher if he has in fact exhausted his administrative remedies.

Further, the Department alleges that Mulero's Title VII claims should be dismissed because they are time barred because he filed his Complaint well passed the 300-day look back period. It is true that a plaintiff has three hundred days after the unlawful conduct occurs to file a charge with the EEOC. 42 U.S. C. § 2000e-5(e)(1); AMTRAK v. Morgan, 536 U.S. 101, 110 (2002). While Mulero states that "the Defendant engages in unfair labor practices, discrimination and retaliation continuing to the present", he does not allege any incidences in his Amended Complaint after December 14, 2005. Am. Compl. at 1. Thus, Mulero must show that he filed a complaint with the EEOC sometime before December 9, 2006. It is not clear from the Amended Complaint whether or not Mulero did this because, again, all the Complaint contains it a one page letter from the EEOC dated April 24, 2007, without any indication

---

[12]Mulero attached one right to sue letter dated April 23, 2007, and a list of complaints he lodged with the CHRO as of February 15, 2006.

[13]For instance, the EEOC right to sue letter does not indicate whether Mulero brought an ADA claim, a Title VII claim, or some claim entirely unrelated to this Complaint.

of when the complaint was filed and to what it related.

It bears noting again that "bald assertions and conclusion of law will not suffice to state a claim." Tarshis, 211 F.3d at 35. Further, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions.'" Bell Atlantic Corp v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007). Accordingly, while the court is sensitive to the fact that the plaintiff is appearing *pro se*, it finds that, even when relaxing the pleading standards, Mulero has not stated a claim upon which relief can be granted. Other than a somewhat cryptic EEOC letter, there are no facts alleged in the Amended Complaint that he exhausted his remedies as to the claims he asserts in this lawsuit.

### C. Thirteenth Amendment Claims

Finally, Mulero claims that as a result of the alleged retaliation, the Department violated his Thirteenth Amendment Rights. However, the Third Amended Complaint contains no allegations of "slavery nor involuntary servitude." U.S. Const., Amend. XIII. Mulero's claims concern unfair labor practices as well as retaliation. At no point does Mulero claim he was a slave or subject to involuntary servitude. Mulero's claims with respect to the Thirteenth Amendment are therefore dismissed.

## V. CONCLUSION

For the foregoing reasons, the Department's Motion to Dismiss (Doc. No. 37) is GRANTED without prejudice. Plaintiff is granted the right to file an amended complaint within 21 days of today's ruling, if he can allege, based on facts, that the claim he seeks

to pursue under Title VII has been the subject of an EEOC and/or CHRO filing and that he received a right to sue letter. The pleading should include a right to sue letter with a date that corresponds to a filing with the EEOC and/or CHRO. The court notes that if Mulero chooses to amend the Complaint with respect to the Title VII claim, he must comply with Rules 8 and 11 of the Federal Rules of Civil Procedure. Specifically, the Amended Complaint should consist of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Further, under Rule 11, any pleading must have a reasonable basis in fact and law. The court is only granting plaintiff permission to replead the claim related to Title VII.

All claims related to ADA, CFEPA, and the Thirteenth Amendment are dismissed. Mulero may attempt to pursue his CFEPA claims in state court. Finally, Mulero's Motion for Miscellaneous Relief (Doc. No. 49) is DENIED.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 18th day of August, 2008.

                                /s/ Janet C. Hall
                                Janet C. Hall
                                United States District Judge